UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ROBIN WHEELER, on behalf       :
of herself and others          :
similarly situated,            :
                               :
        Plaintiffs,            :    Case No. 2:15-cv-170
                               :
    v.                         :
                               :
HAL COHEN and KEN SCHATZ,      :
                               :
        Defendants.            :

## OPINION AND ORDER

This class action seeks to prevent the State of Vermont from reducing monthly cash assistance benefits for approximately 860 Vermont households.  The class is comprised of parents who receive Supplemental Security Income ("SSI") and Temporary Assistance for Needy Families ("TANF").  In an effort to reduce state spending, the Vermont Legislature recently voted to decrease TANF grants by up to $125 for all households in which at least one adult receives SSI.  Plaintiffs contend that the change in benefits violates federal law, and have moved for a preliminary injunction to prevent the statute from taking effect. Defendants have filed a motion to dismiss the case for failure to state a claim.  For the reasons set forth below, the motion for a preliminary injunction is **denied** and the motion to dismiss is **granted**.

## Background

The plaintiff class is comprised of adults who receive SSI

benefits and live in households with dependent minor children. SSI is a federal program designed to provide income benefits for aged, blind, or disabled Americans.  42 U.S.C. § 1381.  In Vermont, qualifying households with dependent children are eligible for further income benefits from the State's TANF program, known as "Reach Up."  The Reach Up program is designed to provide a grant of 49.6% of basic needs for the household assistance unit.

Reach Up is administered by the Vermont Agency of Human Services through the Department of Children and Families Division of Economic Services ("DCF").  Defendants are the respective Secretary and Commissioner of those offices.  Prior to Reach Up, DCF administered welfare funds pursuant to Title IV of the Social Security Act, known as Aid to Families with Dependent Children ("AFDC").  AFDC did not allow states to count SSI recipients in the AFDC assistance group, and barred consideration of those recipients' SSI income when calculating a household's eligibility or benefit amount.  In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act, which repealed AFDC and replaced it with TANF.  Relevant to this case, and unlike AFDC, TANF does not expressly bar consideration of SSI income.

The Vermont Legislature recently amended Title 33, Section 1103(c), such that when Reach Up benefits are determined, "[t]he

amount of $125.00 of the [SSI] payment received by a parent excluding payments received on behalf of a child shall count toward the determination of the amount of the family's financial assistance grant."  33 V.S.A. § 1103(c)(9).  In other words, Reach Up grants will be offset by the amount of SSI received by one or more adults in the household, up to $125 per month.  In amending Section 1103 as part of a larger piece of legislation known as Act 58, the Legislature stated that its goal was to achieve budgetary savings.

Named plaintiff Robin Wheeler, who resides with her minor daughter, receives SSI in the amount of $759 per month due to a mental health disability.  She has also been receiving $478 in Reach Up assistance for the care and support of her daughter, together with food benefits.  In a notice sent July 14, 2015, DCF alerted Ms. Wheeler that as of August 2015, $125 of her SSI would be counted as unearned income and her $478 Reach Up grant would be correspondingly reduced to $353 per month.[1]  The notice also informed Ms. Wheeler that as a result of the lower Reach Up grant, her 3SquaresVT food assistance benefit would increase from $261 to $317 per month.  Ms. Wheeler was further notified of her appeal rights.  The notice explained the effect of an appeal as follows:

---

[1]  By stipulation of the parties, Defendants have agreed to delay implementation of the change in benefits for no more than 60 days from September 10, 2015.  ECF No. 29.

> Your family's benefits will not continue at the current
> level if the only reason you appeal is you don't agree
> with the change in state law.
>
> Your family's benefits may continue at the current
> level if you think the department calculated your
> family's benefit or applied the new law incorrectly.
> If you request an appeal by July 31, 2015, your
> family's benefits will continue at the current level
> unless you tell us that you don't want them to
> continue.

ECF No. 1-2 at 1.

With the change in benefits brought about by Section 1103(c)(9), households with access to adult SSI benefits will now receive less Reach Up money than those with no such income. The law also continues to allow households with adult SSI income to receive greater Reach Up benefits than households with access to an equivalent amount of non-SSI income. To illustrate these scenarios, the Court considers three hypothetical households, each with three people. The first household has a total financial need of $1291 per month, has no other net income, and receives Reach Up benefits of $650 per month (representing 49.6% of the assistance group's need). ECF No. 16-1 at 3. The second household has the same amount of need, but includes an adult who receives non-SSI income of $700 per month. That $700 is subtracted from the household's $650 Reach Up calculation, resulting in no Reach Up payment. ECF No. 16-2 at 3.

The third household includes an adult who receives $700 per month from SSI. Because the SSI beneficiary is excluded from the

assistance group, the Reach Up grant is based upon two people rather than three, and the financial need figure is lowered from $1291 to $1080.  The household's Reach Up grant calculation is then $545, from which $125 is subtracted, resulting in a Reach Up payment of $420 per month.  ECF No. 16-3 at 3.  As in the case of Ms. Wheeler, a reduction in Reach Up benefits would result in an increased food assistance payment for this third household.

The Court finds that considering SSI income in the benefits calculation is not unique to the Reach Up program, as other Vermont assistance programs, including 3SquaresVT and LIHEAP (heating assistance), also consider such income in their benefits calculations.

The Second Amended Complaint alleges that Defendants have denied the plaintiff class due process through lack of rulemaking and insufficient notice; are discriminating on the basis of a disability; are violating Social Security's inalienability rules; and are frustrating the purposes of both the TANF and Social Security programs.  Plaintiffs further claim that it is improper to consider an adult's SSI income while excluding that person from the Reach Up assistance unit.

## Discussion

Now pending before the Court are Defendants' motion to dismiss the Complaint and Plaintiffs' motion for preliminary

injunctive relief.[2]  The Court will first consider the motion to dismiss, as dismissal would render moot the matter of preliminary injunctive relief.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing failure to state a claim.  In deciding a Rule 12(b)(6) motion, the Court applies a "plausibility standard" which is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  First, the Court must accept all of the Complaint's allegations as true, although this "'tenet'" is "'inapplicable to legal conclusions.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).  Second, only complaints that state a "'plausible claim for relief'" survive a motion to dismiss.  *Id.*  Determining whether a complaint does so is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.*

In deciding a Rule 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of [the] complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67,

---

[2]  Because the allegations in the initial Complaint are substantially the same as those raised in the Second Amended Complaint, with the exception of claims that were previously dismissed, the Court will consider the motion to dismiss as pertaining to the Plaintiffs' most recent pleading.  *See* 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 (3d ed. 1998) ("defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending").

71 (2d Cir. 1998).  This rule has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

## I.    Procedural Due Process

Count I of the Second Amended Complaint alleges that the change in Reach Up benefits will violate Plaintiffs' right to procedural due process.  Specifically, Plaintiffs claim that Defendants' "[f]ailure to engage in statutorily prescribed administrative procedures deprives Plaintiffs of notice, hearing, and public comment period prior to effectuation of the policy." ECF No. 43, ¶ 43.  Plaintiffs' briefing also argues that notice of the change was improper.

### A.    Due Process Rights

Reach Up benefits, as with other entitlements, "are appropriately treated as a form of 'property' protected by the Due Process Clause; accordingly, the procedures that are employed in determining whether an individual may continue to participate in the statutory program must comply with the commands of the Constitution."  *Atkins v. Parker*, 472 U.S. 115, 128 (1985) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970)).  That

7

said, "a welfare recipient is not deprived of due process when
the legislature adjusts benefit levels." *Logan v. Zimmerman
Brush Co.*, 455 U.S. 422, 432-33 (1982).  In such a case, "the
legislative determination provides all the process that is due."
*Id.; see also Story v. Green*, 978 F.2d 60, 63 (2d Cir. 1992)
(holding that where a statute creates a right to public benefits,
the legislature retains the power to enact new legislation
altering or eliminating that right).

As the Supreme Court explained in *Atkins* after Congress
voted to lower food stamp benefits:

> Such a change must, of course, comply with the
> substantive limitations on the power of Congress, but
> there is no suggestion in this case that the amendment
> at issue violated any such constraint.  Thus, it must
> be assumed that Congress had plenary power to define
> the scope and the duration of the entitlement to
> food-stamp benefits, and to increase, to decrease, or
> to terminate those benefits based on its appraisal of
> the relative importance of the recipients' needs and
> the resources available to fund the program.  The
> procedural component of the Due Process Clause does not
> "impose a constitutional limitation on the power of
> Congress to make substantive changes in the law of
> entitlement to public benefits." *Richardson v.
> Belcher*, 404 U.S. 78, 81 (1971).

472 U.S. at 129.  *Atkins* noted that this analysis might be
different where a benefit adjustment was "based on individual
factual determinations, and notice and an opportunity to be heard
had been denied."  *Id.* at 131 n.35; *see also Conway v. Sorrell*,
894 F. Supp. 794, 801-02 (D. Vt. 1995) ("a due process claim is
available when the legislature deprives property rights with

legislation that is targeted at a particular individual or small group of individuals, or that was adopted during the course of a legislative process that was somehow defective."). This is not such a case.

Here, the Vermont Legislature enacted a change to benefit levels on a class-wide basis. As in *Atkins*, "the statutory amendment only required a simple calculation of household income under a new formula based on a static set of facts." *Yoakim v. McDonald*, 71 F.3d 1274, 1291 (7th Cir. 1995) (discussing *Atkins*). Plaintiffs nonetheless claim two forms of due process violations: (1) a failure to engage in a public rulemaking process, and (2) inadequate notice of the statutory change.

**B.   Rulemaking**

Plaintiffs claim that the new law required administrative rulemaking, and that a failure to provide access to the rulemaking process – including notice, public hearing, and a public comment period – violated their rights. Vermont's current TANF plan states that "changes in state policy subsequent to adoption of this state plan are made through the rule-making process defined in state law." ECF No. 18-1 at 2. However, a review of Section 1103 reveals that despite the rulemaking requirement, Defendants have no discretion with respect to the specific rule to be imposed. Section 1103(c) states that

> The Commissioner *shall adopt rules* for the
> determination of eligibility for the Reach Up program

9

and benefit levels for all participating families *that include the following provisions*:

. . .

>   (9) The amount of $125.00 of the Supplemental Security Income payment received by a parent excluding payments received on behalf of a child *shall* count toward the determination of the amount of the family's financial assistance grant.

33 V.S.A. § 1103(a)(9) (emphases added). The statute further states that "[i]n no case may the Department expend State funds in excess of the appropriations for the programs under this Chapter." 33 V.S.A. § 1103(a). Accordingly, Defendants are required to adopt rules that mirror Section 1103(c)(9), and are not authorized to award benefits in excess of the statutory mandate.

Plaintiffs have offered no authority for the proposition that due process requires agency rulemaking in the face of mandatory legislation. In fact, courts have generally held that "[t]he Due Process Clause does not require a state agency to engage in notice-and-comment rulemaking." *New Jersey Primary Care Ass'n Inc. v. New Jersey Dept. of Human Serv.*, 722 F.3d 527, 537 (3d Cir. 2013); *Tenny v. Blagojevich*, 659 F.3d 578, 582 (7th Cir. 2011) ("The plaintiffs suggest that some sort of notice-and-comment rulemaking might satisfy constitutional due process. The prospect of a federal court ordering a state to create such a procedure risks turning procedural due process into

10

a constitutionally mandated state administrative procedure
act.").

In any event, the change in benefits at issue in this case
was the direct result of a legislative mandate.  The terms of the
new rules have been clearly dictated, and Defendants are
compelled to enforce the new law.  *Cf. Atkins*, 472 U.S. at 130
(holding that because reduction in food stamps benefits "was the
direct consequence of the statutory amendment, [plaintiffs] have
no basis for challenging the procedure that caused them to
receive a different, less valuable property interest after the
amendment became effective").  Plaintiffs' contention that
Defendants were nonetheless constitutionally compelled to engage
in rulemaking is without merit.

### C.  Notice

Plaintiffs next argue that the notice in this case denied
them due process because it did not cite the law or rule reducing
their benefits.  Such a citation, they argue, would have provided
notice of their right to rulemaking and an opportunity to
challenge the law.  Even assuming a right to rulemaking,
Plaintiffs have failed to state a viable due process claim.

In July 2015, DCF sent a general notice to Vermont Reach Up
recipients stating in bold print that "[a] change in Vermont law
is changing the way we count Supplemental Security Income (SSI)
payments."  ECF No. 1-2 at 1.  DCF further explained that as a

result of the change, "[w]e will count up to $125 of a parent's
SSI payment as unearned income when determining the family's
monthly cash benefit." *Id.*  The notice made clear that SSI
payments received by or for children would not be counted, and
that "[p]arents who receive SSI will continue being excluded from
Reach Up work and case management requirements." *Id.*

DCF also sent a "Notice of Decision" calculating each
recipient's benefits before and after the change in the law.  For
example, the notice to Ms. Wheeler stated that her Reach Up
benefit was being reduced because her unearned income had
"changed from $0.00 to $125.00," citing Rule 2271.  Rule 2271
states that under the Reach Up program, unearned income includes
"[i]ncome from . . . benefit programs, such as social security .
. . ."  Ms. Wheeler's SSI would now be considered "unearned
income," and her benefit adjusted accordingly.  Recipients were
provided a phone number for the Benefits Service Center if they
had any further questions.

Plaintiffs contend that the notices should have cited more
than just Rule 2271.  Relying upon New York state law and cases
from outside the Second Circuit, they argue that a notice must
specifically reference the statute or regulation upon which an
agency has based its determination.  Plaintiffs also cite a
federal regulation requiring that a reduction in Social Security
assistance be accompanied by notice of "the specific regulations

12

supporting such action." ECF No. 18 at 9-10 (citing 45 C.F.R. §
205.10(4)(i)(B)).

The Vermont Legislature did not enact a reduction in Social
Security benefits. Ms. Wheeler's SSI payments were unchanged,
with the only change being the assistance unit's benefit level.
Further, Plaintiffs' notice argument assumes that the legislative
process did not, as the Supreme Court has held, "provide[] all
the process that is due." *Logan*, 455 U.S. at 432-33. Even
accepting Plaintiffs' assumption, however, their due process
claim of inadequate notice is implausible.

Plaintiffs argue that the lack of a citation to the
authorizing law or statute denied them "a reasonable opportunity
to know what the law is, why their benefits are being reduced and
any opportunity to object, contest, or challenge the Defendants'
determination that they or their households should be subject to
the proposed reduction." ECF No. 18 at 12. On the contrary, the
notices to SSI recipients plainly described the change in the law
and offered them an opportunity to appeal if they believed "the
department calculated your family's benefit or applied the new
law incorrectly." ECF No. 1-2 at 1. With respect to notice of
rulemaking, Plaintiffs have again offered no controlling case law
to support the contention either that they had a constitutional
right to rulemaking, or that a notice needs to reference that
specific right.

13

The Court therefore finds that Plaintiffs have failed to state a plausible procedural due process claim, and Count I of the Second Amended Complaint is **dismissed.**

## II. Equal Protection

Count II of the Second Amended Complaint alleges that counting SSI income while excluding SSI recipients from the eligible assistance group violates Plaintiffs' equal protection rights under the Fourteenth Amendment.  More specifically, Plaintiffs contend that Defendants are treating them – as SSI recipients – differently from others solely because they are parents with a disability.  Plaintiffs also allege that their classification for purposes of budget savings is not rationally related to a legitimate government interest.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (citation omitted). To prove a violation of the Equal Protection Clause, Plaintiffs must demonstrate that they are being treated differently as a result of intentional or purposeful discrimination.  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Equal protection analysis begins with determining the appropriate level of scrutiny.  *Ramos v. Town of Vernon*, 353 F.3d 171, 174 (2d Cir. 2003).  A heightened level of scrutiny applies when discrimination is based on membership in a suspect class,

such as a racial group, and the government must show that its action is "narrowly tailored to further compelling governmental interests." *Jana-Rock Constr., Inc. v. New York State Dep't of Econ. Dev.*, 438 F.3d 195, 205 (2d Cir. 2006) (citation omitted). For allegations of discrimination based on non-suspect classifications, "the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest." *Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998).

Disability is not a protected class and therefore receives rational basis review. *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366 (2001); *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 109 (2d Cir. 2001).[3] Rational basis review is highly deferential, and government action must be upheld if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Yuen Jin v. Mukasey*, 538 F.3d 143, 158 (2d Cir. 2008) (citation

---

[3]   The Second Circuit has noted that "rationality review" is appropriate in reviewing a motion to dismiss where "it takes but momentary reflection to arrive at a governmental purpose that is both legitimate beyond dispute and rationally related to the state's classification." *Johnson v. Baker*, 108 F.3d 10, 11-12 (2d Cir. 1997) (citing *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 936 (5th Cir. 1988)). "Where rational basis scrutiny applies, the Government has no obligation to produce evidence, or empirical data to sustain the rationality of a statutory classification, and instead can base its statutes on rational speculation". *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001) (internal quotation marks and citation omitted).

omitted).  Indeed, "equal protection is not a license for courts
to judge the wisdom, fairness, or logic of legislative choices."
*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  In
particular, "[s]ocial and economic legislation" such as the TANF
program "that does not employ suspect classifications or impinge
on fundamental rights must be upheld against equal protection
attack when the legislative means are rationally related to a
legitimate governmental purpose."  *Hodel v. Indiana*, 452 U.S.
314, 331 (1981).  Such laws carry a "presumption of rationality
that can only be overcome by a clear showing of arbitrariness and
irrationality."  *Id.* at 331–32.

Plaintiffs claim that the Legislature has engaged in
purposeful discrimination against disabled parents.  As discussed
above, however, SSI recipient-households still receive greater
benefits than households with comparable needs and non-SSI
income.  Furthermore, "generating budget savings, particularly
during a budget crisis, is a legitimate governmental purpose."
*New York City Managerial Emps. Ass'n v. Dinkins*, 807 F. Supp.
958, 966 (S.D.N.Y. 1992) (citing *Pineman v. Fallon*, 842 F.2d 598,
602 (2d Cir. 1988)).  As the Second Circuit has warned, "[t]he
temptation may well exist to dismiss any effort to achieve fiscal
integrity as ineffectual or 'underinclusive.'  The wiser course,
in our view, is to recognize that steps to control the budget
deficit, however modest in degree, nonetheless are legitimate,

16

and perhaps necessary, objectives of the" legislation.  *Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136, 143 (2d Cir. 1992).

Plaintiffs acknowledge that the change in benefits at issue here was enacted "to reduce the budget."  ECF No. 43 (Preliminary Statement).  The legislative history confirms that the Legislature viewed Act 58 as "the beginning of a multiyear process to align State spending and bring revenues and spending into a long-term balance.  The fiscal year 2016 Appropriations Bill contains difficult choices; however, these types of decisions will continue to occur annually without a concerted effort to create a sustainable budget."  Act 58, Sec. 1.100.1. The "difficult choices" cited by the Legislature are precisely the kinds of delineations that are "the legislature's province to draw."  *Brown v. Bowen*, 905 F.2d 632, 635 (2d Cir. 1990).

The Legislature has determined that Reach Up households with access to SSI income are entitled to a lower benefit than those with no such income.  Not only does this determination save the state money, it also bears a rational relationship to the relative needs of Reach Up families.  *See, e.g., Bowen v. Gilliard*, 483 U.S. 587, 599 (1987) (holding that change in AFDC benefits reflected the legislative goal of "distributing benefits among competing needy families in a fair way").  Given the substantial deference afforded to governmental actions, the Court

17

finds that these purposes are both rational and legitimate, and
that Plaintiffs have failed to state a violation of their equal
protection rights.  Count II of the Second Amended Complaint is
**dismissed.**[4]

## III. Preemption

Count III of the Complaint alleges that the new Vermont law
violates the federal Social Security statute and the purpose of
the TANF program, and is therefore barred under the Supremacy
Clause of the Constitution.  With respect to the Social Security
Act, Plaintiffs cite the statute's prohibition on the assignment
or alienation of benefits, and claim that Vermont has violated
this provision by considering SSI income in the calculation of
Reach Up Benefits.  The Social Security law provides:

> The right of any person to any future payment under
> this subchapter shall not be transferable or
> assignable, at law or in equity, and none of the
> money's paid or payable or rights existing under this
> subchapter shall be subject to execution, levy,
> attachment, garnishment, or other legal process, or to
> the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).  The Supreme Court has taken a restrictive
view of the term "other legal process," holding that it

> should be understood to be process much like the
> processes of execution, levy, attachment, and
> garnishment, and at a minimum, would seem to require
> utilization of some judicial or quasi-judicial

---

[4]  To the extent Plaintiffs argue that the legislation is
illegitimate because it conflicts with the goals of TANF and SSI, that
argument will be addressed in the section discussing Plaintiffs'
preemption claim.

mechanism, though not necessarily an elaborate one, by
which control over property passes from one person to
another in order to discharge or secure discharge of an
allegedly existing or anticipated liability.

*Washington State Dep't of Soc. & Health Servs. v. Guardianship
Estate of Keffeler*, 537 U.S. 371, 385 (2003) ("*Keffeler*").
*Keffeler* held that Washington State could reimburse itself for
foster child care expenses out of the child's other federal
benefits without violating Section 407(a), since the state's
action did not constitute "legal process" and was not a form of
garnishment, transfer or assignment.  *Id*. at 383 n.6, 392.

Post-*Keffeler*, the Second Circuit recognized that "three
essential characteristics define an impermissible 'legal
process': (1) the process is 'judicial or quasi-judicial'; (2)
the process transfers 'control of property . . . from one person
to another'; and (3) the process is applied 'in order to
discharge or secure discharge of an allegedly existing or
anticipated liability.'"  *Wojchowski v. Daines*, 498 F.3d 99, 109
(2d Cir. 2007).  Applying this analysis, the Second Circuit in
*Wojchowski* held that New York could consider Social Security
payments paid to an institutionalized person when considering the
Medicaid eligibility of that person's spouse.  The court reasoned
that because such consideration did not "shift control over the
benefits to someone else" and was "not a mechanism designed to
insure that a judgment will be satisfied," it was "essentially a
budgeting methodology" and did not violate Section 407(a).  *Id.*

at 110 (internal quotation marks and citation omitted).

The same reasoning applies here.  Considering SSI benefits when determining Reach Up payments does not transfer those benefits to the control of someone else.  Nor does it "discharge or secure discharge of an allegedly existing or anticipated liability."  *Keffeler*, 537 U.S. at 385.  Instead, the Vermont Legislature decided to use a portion of a household member's benefits as part of a "budgeting methodology" when determining the assistance unit's Reach Up benefit.  *Wojchowski*, 498 F.3d at 109.  In *Gilliard*, the Supreme Court noted that "Congress is entitled to rely on a classwide presumption that custodial parents have used, and may legitimately use, [child] support funds in a way that is beneficial to entire family units."  483 U.S. at 600.  Applying that same presumption to consideration of SSI benefits does not violate Section 407(a).

Plaintiffs also allege that Defendants are violating the purpose of the TANF program.  The stated purpose of the statute is to

> increase the flexibility of States in operating a program designed to (1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives; (2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage; (3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and (4) encourage the formation and maintenance of two-parent families.

42 U.S.C. § 601(a).  Plaintiffs further note that the TANF
statute calls for community input on state plans, and that
Vermont's TANF plan requires compliance with the Vermont
Administrative Procedures Act and rulemaking in the event of a
policy change.

TANF specifically intended to allow states flexibility in
applying their respective benefits programs.  *See id.*  The prior
statute, AFDC, did not allow states to take "into consideration
in any way the presence of an SSI recipient in an AFDC household
when computing the AFDC recipients' award."  *Martinez v. Maher*,
485 F. Supp. 1264, 1272 (D. Conn. 1980) (citing former 42 U.S.C.
§ 602(a)(24)), *aff'd*, 631 F.2d 5 (2d Cir. 1980).  States are now
allowed to include income to such recipients, even though those
recipients are not part of the Reach Up assistance unit.

Nothing in this new methodology directly conflicts with the
goals of TANF, as the assistance unit still receives financial
aid in the interest of achieving the purposes set forth in
Section 601(a).  Moreover, federal law only requires that the
states determine TANF benefits "in any manner that is reasonably
calculated to accomplish the [statute's] purposes," and prohibits
the federal government from regulating state conduct "except to
the extent expressly provided" in the statute.  42 U.S.C. §§
604(a) and 617.

Plaintiffs do not contend that the Reach Up program was

21

initiated without community involvement, and instead rely on a provision in the state plan with respect to policy changes.  As the Vermont methodology does not directly conflict with the statute itself, and continues the effort to achieve the outcomes envisioned by Congress, there is no Supremacy Clause issue in this case.  Count III of the Second Amended Complaint is **dismissed.**

## IV.   Americans With Disabilities Act and Rehabilitation Act

In Counts IV and V, Plaintiffs allege that Defendants are unlawfully discriminating by excluding them, as disabled parents, from the Reach Up assistance group while still considering their benefits.  Such exclusions, they claim, violate the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance."  Given the similarities
in the two statutes, the standards applied to claims under the
ADA "are generally the same as those required under section 504
of [the Rehabilitation Act for] federally assisted programs and
activities."  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d
Cir. 2003).  To prove a violation, a party must establish: (1)
that she is a "qualified individual" with a disability; (2) that
she was excluded from participation in a public entity's
services, programs or activities or was otherwise discriminated
against by a public entity; and (3) that such exclusion or
discrimination was due to her disability.  *Hargrave v. Vermont*,
340 F.3d 27, 34–35 (2d Cir. 2003).

Plaintiffs contend that because SSI beneficiaries are
necessarily disabled, Section 1103(c)(9) deprives them of a
public service that is available to the non-disabled.[5]
Defendants respond that rather the differentiating on the basis
of a disability, the Legislature was merely identifying a source
of income to be considered in benefits calculations.  Defendants
further argue that the law is evenhanded, as income to non-
disabled persons is also considered in the Reach Up grant

---

[5]  Plaintiffs' briefing discusses non-monetary aspects of the
Reach Up program, such as job preparation.  However, the prayer for
relief in the Second Amended Complaint does not seek access to such
services, and instead asks the Court to order Defendants "to cease and
desist from any reduction in Reach Up benefits to the affected class
and to refrain from reducing benefits to such Plaintiffs in the
future."  ECF No. 43 at 19.  The Court will therefore focus on the
financial implications of the legislative change.

calculation.

Under the Reach Up program, the benefit being provided is to the household, and not to the disabled person(s).  The disabled person's benefit, in the form of an SSI benefit, is unaffected. Accordingly, there is no "program" or "service" being denied when the Reach Up grant considers SSI income.  In fact, as Plaintiffs repeatedly point out, the disabled person is not even considered a part of the assistance unit.

Furthermore, Plaintiffs have alleged no facts to support a claim that the Legislature intended to discriminate against the disabled.  Under the new Reach Up formula, disabled persons who receive unearned SSI income will be treated the same as other, non-disabled persons who receive either earned or unearned income, up to a limit of $125.  There is no special provision for disabled household members who do not receive SSI.[6]

Finally, and as discussed above, the Supreme Court has counseled against "second-guess[ing] state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad potential recipients."  *Dandridge v. Williams*, 397 U.S. 471, 487 (1970).  Vermont now considers up to

---

[6]  "[M]ore than half of the families applying for or receiving TANF have at least one family member with a physical or mental limitation.  For a variety of reasons, many of these individuals do not qualify for or are not receiving Supplemental Security Income (SSI)."  *Using Title II of the Americans with Disabilities Act on Behalf of Clients in Tanf Programs*, 8 Geo. J. on Poverty L. & Pol'y 1, 9 (2001).

$125 of SSI income when distributing limited Reach Up funds.
Nothing in this new formula results in discrimination as
envisioned by the ADA or the Rehabilitation Act.  *Cf. Olmstead v.
L.C. ex rel. Zimring*, 527 U.S. 581, 612-13 (1999) (Kennedy, J.,
concurring) ("No State has unlimited resources, and each must
make hard decisions on how much to allocate to treatment of
diseases and disabilities . . . .  The judgment, however, is a
political one and not within the reach of [Title II of the
ADA].").  Counts IV and V of the Second Amended Complaint are
therefore **dismissed**.

### Conclusion

The law at issue in this case targets one of the most
vulnerable populations in Vermont: disabled adults raising
children in poverty.  In an effort to achieve budgetary savings
the Legislature has voted to decrease public aid to those
families, resulting in what can only be further hardship for
parents as they struggle to provide food and shelter for their
children.  While the Court is sensitive to the plight of these
families, and acknowledges the efforts of Vermont Legal Aid on
behalf of the plaintiff class, it finds no sound legal basis for
maintaining the Plaintiffs' claims.  Accordingly, and for the
reasons set forth above, Defendants' motion to dismiss (ECF No.
15) is **granted**, Plaintiffs' motion for *ex parte* restraining order
and preliminary injunction (ECF No. 2) is **denied** as moot, and

this case is **dismissed**.

DATED at Burlington, in the District of Vermont, this 9th day of November, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge